**Anzhik Davit DAVTYAN, Petitioner,**

v.

**John ASHCROFT, Attorney General, Respondent.**

**No. 03–71709.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 2, 2004.

Decided Oct. 27, 2004.

Melanie M. Yang, Esq., Rose, Rose & Hammill, LLP, Beverly Hills, CA, Regional Counsel, Western Region Immigration & Naturalization Service, Laguna Niguel, CA, Ronald E. LeFevre, Chief Legal Officer, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, Norah Ascoli Schwarz, Esq., Linda S. Wernery, Esq., Shelley R. Goad, Esq., William C. Minick, U.S. Department of Justice, Washington, DC, for Respondent.

Before: REINHARDT, WARDLAW, and PAEZ, Circuit Judges.

MEMORANDUM *

Anzhik Davit Davtyan, a native and citizen of Armenia and a member of the National Democratic Union ("NDU"), petitions for review of the decision of the Board of Immigration Appeals ("BIA") affirming the immigration judge's ("IJ") denial of asylum and withholding of removal because the "persecution" she suffered was not "on account" of political opinion. We review the IJ's decision as if it were the BIA's because the BIA summarily affirmed that decision. *See Al–Harbi v. INS,* 242 F.3d 882, 887–88 (9th Cir.2001). "To reverse the BIA finding we must find that the evidence not only *supports* that conclusion, but *compels* it." *INS v. Elias–Zacarias,* 502 U.S. 478, 481 n. 1, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992).

 The primary issue in this case is whether the assault upon Davtyan was "on account of" political opinion. The govern-

David L. Ross, Esq., Ross, Rose & Hammill, LLP, Beverly Hills, CA, for Petitioner.

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

ment concedes that Davtyan was credible, so we take all of Davtyan's testimony as true. According to Davtyan, the attackers who assaulted both her and her husband, and administered the beating from which her husband died, specifically told her husband while they were beating him to "get out of the NDU or we will destroy your family." This, along with the circumstances surrounding the attack, compels us to hold that the beating Davtyan sustained was on account of an imputed political opinion.[1] Although the armed men took some jewelry items from Davtyan during the beating, that conduct does not negate the political basis of the persecution. Indeed, we have recognized that a persecutor may have multiple motives for inflicting harm on an applicant. *See Borja v. INS*, 175 F.3d 732, 735 (9th Cir.1999) ("[T]he plain meaning of the phrase 'persecution on account of political opinion,' does not mean *solely* on account of the victim's political opinion. That is, the conclusion that a cause of persecution is economic does not necessarily imply that there cannot exist other causes of the persecution."); *see also Agbuya v. INS*, 241 F.3d 1224, 1229–30 (9th Cir.2001). An applicant need only "produce evidence from which it is reasonable to believe that the harm was motivated, at least in part, by an actual or implied protected ground." *Borja*, 175 F.3d at 736. In light of this, we reverse the IJ's finding that the attack on Davtyan and her husband was not on account of political opinion and hold that Davtyan was a victim of past persecution.

Because Davtyan was subjected to past persecution, she is entitled to a presumption of well-founded fear of future persecution. *See* 8 C.F.R. § 208.13(b)(1)(i); *Popova v. INS*, 273 F.3d 1251, 1259 (9th Cir. 2001). The burden then shifts to the INS to show by a preponderance of the evidence that country conditions have changed to such an extent that the petitioner no longer has a well-founded fear that she would be persecuted if she were to return. *See id.* Here the IJ applied the presumption in favor of Davtyan. He "br[ought his] expertise to bear upon" Davtyan's particular circumstances and conducted an individualized assessment of her claim, including the fact that she had returned to Armenia before filing for asylum. *INS v. Ventura*, 537 U.S. 12, 17, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002).

■ Although the IJ found that Davtyan did not suffer past persecution, he proceeded to decide the question of well-founded fear: "Even if I believed that ... [Davtyan] also have [sic] been persecuted in the past ... it seems to me that the fact that she returned to Armenia after that happened is an indication that she should not be granted asylum due to past persecution." The IJ and the government assert that Davtyan's decision to return to Armenia prior to applying for asylum served to rebut the presumption that she had a well-founded fear of future persecution. This argument, however, ignores Davtyan's explanation, which we must credit since the IJ found her testimony credible: She returned to Armenia in 1998 because a new president had been elected and she expected that the political condi-

---

1. Although Davtyan herself participated in NDU meetings and activities, the motivation for the beating in question appears to be based on her husband's political activities in the same organization. As a result, her persecution is best characterized as based on an imputed political opinion. *See Navas v. INS*, 217 F.3d 646, 661 (9th Cir.2000) ("Typically, where killings and other acts of violence are inflicted on members of the same family by government forces, the inference that they are connected and politically motivated is an appropriate one."). We need not decide, however, whether the persecution could also be characterized as based on Davtyan's actual political opinion.

tions would have improved, but when government officials harassed her immediately upon her return to Armenia, she realized that conditions were no better than before, and again fled to the United States shortly afterwards in February 1999. The harassment upon her return to Armenia not only alerted her to the potential for future government harassment, but more important, to the government's continued unwillingness or inability to protect her from the politically motivated persecution of which she and her husband were victims in the past. Therefore, even if Davtyan lacked a well-founded fear of persecution at the time she returned to Armenia in 1998 because of her hope that the situation had improved, her subsequent experience confirmed her earlier subjective and objective fear that if she stayed in Armenia, or was sent back, further persecution would be likely. Her willingness to return to Armenia in 1998, therefore, does not rebut her well-founded fear of persecution at the time she applied for asylum.[2]

■ We also conclude that there is no need to remand to the BIA to allow it to consider changed country conditions. Here, although a State Department report was submitted, there was no evidence in the report suggesting any changed country conditions pertaining to NDU members such as Davtyan. Furthermore, the government failed to argue changed conditions before the IJ and the BIA. As a result, "no argument concerning changed country conditions ... [and] no documentary evidence *for that purpose*" was introduced. *Ndom v. Ashcroft,* 384 F.3d 743 (9th Cir.2004) (emphasis added). "In these circumstances," as we have ex-

plained, "to provide the INS with another opportunity to present evidence of changed country conditions, when it twice had the chance, but failed to do so, would be exceptionally unfair." *Baballah,* 367 F.3d at 1078 n. 11.

■ The presumption arising from the finding of past persecution applies to Davtyan's withholding of removal claim as well. Again, the INS failed to rebut the presumption. Thus we hold that it is "more likely than not that [Davtyan] would be subject to persecution" if returned to Armenia, *Baballah,* 367 F.3d at 1079 (quoting *INS v. Stevic,* 467 U.S. 407, 424, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984)). She is, accordingly, entitled to withholding of removal.

For the foregoing reasons, we GRANT the petition and reverse the IJ's finding that the attack on Davtyan was not on account of an imputed political opinion. Because we conclude that Davtyan was subject to past persecution, and because we reverse the IJ's alternate finding that Davtyan's presumption of a well-founded fear of persecution was rebutted, we hold that Davtyan is statutorily eligible for asylum. We also hold that she is entitled to withholding of deportation. Recognizing the discretionary nature of the decision to grant asylum, however, we REMAND this case to the BIA for the Attorney General to exercise his discretion as to whether to grant Davtyan asylum.

**PETITION GRANTED; REMANDED.**

---

**2.** The IJ also noted, presumably as a rebuttal to Davtyan's fear of future persecution, that her daughter and son continued to live in Armenia after she left, and that her son continues to live there now. The residence of her family members, however, is irrelevant unless there is evidence that they were similarly situated. *See Rios v. Ashcroft,* 287 F.3d 895, 902 (9th Cir.2002). There is no indication in the record that Davtyan's children were, like their parents, active members of the NDU.